AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)  ☐ Original  ☐ Duplicate Original

LODGED
CLERK, U.S. DISTRICT COURT
05/20/2021
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DM_____ DEPUTY

FILED
CLERK, U.S. DISTRICT COURT
5/20/21
CENTRAL DISTRICT OF CALIFORNIA
BY: ___ev_____ DEPUTY

# UNITED STATES DISTRICT COURT

for the

Central District of California

United States of America

v.

Daryl Dan Muñoz,

Defendant(s)

Case No. 2:21-mj-02497

## CRIMINAL COMPLAINT BY TELEPHONE
## OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of January 21, 2021 in the county of Los Angeles in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 846: | Attempt and conspiracy to distribute methamphetamine; |
| 21 U.S.C. § 841 (a)(1): | Possession with intent to distribute, and distribution of, methamphetamine; |
| 49 U.S.C. § 46314(b)(1): | Entering airport area in violation of security requirements; |
| 18 U.S.C. § 201 (b)(1) | Bribery of public officials |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/
Complainant's signature

Leidy Partida -- FBI, Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: 5/20/21

/s/ Michael Wilner
*Judge's signature*

AUSA: Marina A. Torres x8231

City and state:  Los Angeles, California           Hon. Michael Wilner, U.S. Magistrate Judge
                                                                    *Printed name and title*

AUSA:  Marina A. Torres x8231

**AFFIDAVIT**

I, Leidy Partida, being duly sworn, declare and state as follows:

## I. INTRODUCTION

1. I am a Special Agent ("SA") for the Federal Bureau of Investigation ("FBI") and have been so employed since January 20, 2020. I am currently assigned to the Los Angeles Field Division Southern California Drug Task Force, High Intensity Drug Trafficking Area ("SCDTF-HIDTA"). SCDTF-HIDTA is a task force comprised of agents and officers from federal, state, and local agencies, assigned to investigate large-scale narcotics trafficking.

2. I have participated in the identification of members of drug trafficking organizations using telephone records and bills, photographs, and other documents. I have assisted in the handling of confidential sources, executed search warrants for controlled substances, and conducted physical and electronic surveillance in connection with narcotics investigations. Based on my experience and training with the FBI, I am familiar with the methods used in narcotics trafficking operations and the trafficking patterns employed by narcotics organizations. I know that narcotics traffickers often require the use of one or more telephone facilities to negotiate times, places, and schemes, for importing, manufacturing, and distributing controlled substances and for arranging the disposition of proceeds from the sale of controlled substances. The telephone enables narcotics traffickers to maintain contact with associates, suppliers, and customers. I also know that narcotics traffickers often use fraudulent information to subscribe to communication facilities, especially cellular telephones, and

frequently change communications facilities to thwart law enforcement efforts to intercept their communications.

## II. **PURPOSE OF AFFIDAVIT**

3.  This affidavit is made in support of a criminal complaint against and arrest warrant for Daryl Dann MUÑOZ ("MUÑOZ") for violations of 21 U.S.C. § 846 (attempt and conspiracy to distribute methamphetamine); 21 U.S.C. § 841 (a)(1), (b)(1)(A) (possession with intent to distribute, and distribution of, methamphetamine); 49 U.S.C. § 46314(b)(1) (entering airport area in violation of security requirements); and 18 U.S.C. § 201 (b)(1) (bribery of public officials) (collectively, the "SUBJECT OFFENSES").

4.  The facts set forth in this affidavit are based upon my personal observations and participation in this investigation, my review of material obtained via court authorized search warrant(s), information obtained from various law enforcement personnel and witnesses, and my training and experience.  This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant(s) and does not purport to set forth all my knowledge of, or investigation into, this matter.  Unless specifically indicated otherwise, all recordings, conversations and statements described in this affidavit are related in substance and in part only.

## III. **SUMMARY OF PROBABLE CAUSE**

5.  In August of 2019, FBI Special Agents ("SAs") became aware of a drug trafficking organization ("DTO") that was actively transporting drugs from Los Angeles, California to other parts of the county (including Orlando, Florida and Louisville, Kentucky).

6. On January 22, 2021, a Cooperating Defendant ("CD-1") was arrested while in possession of approximately 22 pounds of methamphetamine at the Orlando International Airport ("MCO") in Florida. CD-1 told law enforcement agents that the methamphetamine was provided by a source of supply ("SOS") at the Los Angeles International Airport ("LAX"). Based on this information, in February of 2021, SAs and Task Force Officers ("TFO") from the Drug Enforcement Administration ("DEA") identified Daryl Dann MUÑOZ as the LAX employee who had provided CD-1 with the aforementioned methamphetamine.

7. In March of 2021, SAs, TFOs, and Homeland Security Investigations ("HSI") Agents interviewed MUÑOZ regarding his involvement with aforementioned methamphetamine seizure. MUÑOZ admitted to receiving a backpack of suspected narcotics from this SOS, with instructions to carry it past TSA screening and exchange it for cash from CD-1.

## IV. STATEMENT OF PROBABLE CAUSE

8. Based on my participation in this investigation, my conversations with other law enforcement officers involved, my review of the evidence recovered in this investigation, and my review of reports and recorded conversations, I know the following:

**A.   The January 22, 2021 Arrest of CD-1 in Florida**

9. On January 22, 2021, at approximately 6:45 A.M., a Transportation Security Administration ("TSA") Agent Joshua Kaplan was conducting a random bag search at MCO gate 35 of the passengers boarding United Airlines flight 1606, which was destined for Dulles International Airport. Agent Kaplan approached CD-1 as CD-1 was attempting to board the flight and conducted a search of CD-1's

3

backpack. CD-1's backpack was in CD-1's possession when Agent Kaplan approached CD-1, and CD-1 was positively identified by CD-1's boarding pass.

10.  Inside of CD-1's backpack, Agent Kaplan observed several transparent bags containing a crystal-like substance, and saw that these bags were airtight, with white clothing wrapped around them. Agent Kaplan immediately notified his supervisor of the suspicious finding.

11.  Subsequently, Orlando Police Department ("OPD") officers responded to gate 35 and met with Agent Kaplan. OPD officers saw what appeared to be "crystal meth" inside of CD-1's backpack, seized the backpack and escorted both the backpack and CD-1 to OPD's airport landside office. OPD officers conducted a field test of the substance found in CD-1's backpack, which tested positive for methamphetamine. Approximately 22 pounds of methamphetamine were recovered from CD-1's backpack. Photos of the methamphetamine and CD-1's backpack are attached (<u>Attachments A</u> and <u>B</u>) and incorporated herein.

12.  CD-1 was arrested by HSI and subsequently charged with drug trafficking offenses, in violation of 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A).[1]

**B.   Interview of CD-1 on January 22, 2021**

13.  After being read CD-1's *Miranda* rights, CD-1 acknowledged that he/she understood these rights and that he/she was waiving them. CD-1 agreed to speak to OPD officers. CD-1 said that he/she was traveling from Los Angeles to Louisville, with a layover in

---

[1] HIDTA-47 received HSI Orlando reports regarding CD-1's arrest.

Orlando. CD-1 said that he/she was contacted telephonically by a Los Angeles-based source-of-supply ("SOS") to transport a backpack containing drugs from LAX to Louisville, Kentucky. The SOS sent CD-1 a text message directing CD-1 to go to a restroom located in Terminal 7 at LAX. Specifically, the SOS instructed CD-1 to go to restroom stall number 4, place a black backpack underneath the stall, and another individual (the courier) would exchange it for a similar backpack containing drugs. CD-1 stated that the SOS maintained contact with CD-1 via text messages throughout the exchange. CD-1 told officers that CD-1 had done this type of transaction before. CD-1 said that he/she did not know what was inside of the bag but believed it was drugs, and that he was going to be paid $1,000 for this exchange. Officers recovered $900 in cash in CD-1's backpack, and another $100 on CD-1's person.

    **C.   Identification of Daryl Dann MUÑOZ.**

14. On January 22, 2021, FBI LAX Group advised FBI HIDTA-47 Group that CD-1 had been arrested in possession of approximately 22 pounds of suspected methamphetamine at MCO, and that CD-1 had obtained said narcotics from an individual inside a restroom located beyond the TSA security screening area at LAX.

15. The DEA NTF at LAX conducted an internal investigation utilizing CD-1's travel itinerary and identified MUÑOZ (a United Airlines employee) as the individual who had provided CD-1 with the methamphetamine. A review of LAX surveillance footage showed MUÑOZ and CD-1 enter the same restroom within Terminal 7 at approximately 8 P.M. on January 21, 2021, and showed both MUÑOZ and CD-1 remain inside the restroom for approximately two minutes. LAX surveillance

footage also showed MUÑOZ and CD-1 carrying similar black backpacks on the evening of January 21, 2021.

###    D.    March 17, 2021 Interview of Daryl Dann MUÑOZ.

16.   On March 17, 2021, FBI, HSI, and DEA SAs and TFOs interviewed MUÑOZ regarding his suspected association to CD-1. The agents expressed to MUÑOZ that the interview was voluntary, that MUÑOZ was not under arrest nor being detained, and that he was free to leave at any time.  MUÑOZ was shown LAX surveillance footage stills (photos) of himself entering and exiting the restroom located within Terminal 7 at LAX, which depicted MUÑOZ carrying a black backpack when entering and exiting the restroom located within Terminal 7 at LAX.  LAX surveillance footage showed MUÑOZ and CD-1 carrying similar backpacks on the evening of January 21, 2021.

17.   MUÑOZ told agents that he would meet an SOS at a predetermined location prior to MUÑOZ's shift for work.  The SOS would provide MUÑOZ with a backpack that contained narcotics.  MUÑOZ would accept the backpack and $1,000 in U.S. currency as payment. MUÑOZ would then go back to work and await further instructions from the SOS.  The SOS would then instruct MUÑOZ, via text message, to go to a specific restroom stall at LAX, place his black backpack (containing narcotics) underneath the stall, and exchange it for a similar (empty) backpack.  MUÑOZ told investigators that he had conducted these types of exchanges two to four times a month, for the last five to seven months.

### E.    MUÑOZ and CD-1 Were Directed by the Same LA-Based SOS.

18.    Through further investigation, agents determined that CD-1 and MUÑOZ were being directed by the same Los Angeles-based SOS to meet in the same restroom located in Terminal 7 at LAX.

19.    Law enforcement searched CD-1's cellular devices and found text messages between CD-1 and the unidentified male ("UM") (using cellular phone number 323-253-5681) in which the UM provided instructions to CD-1 on where the exchange of backpacks was to take place.  CD-1 confirmed that these text messages pertained to the backpack exchange at LAX on the evening of January 21, 2021.  Subsequent investigation identified 323-253-5681 as a cellular phone that was subscribed to Osie WALLACE at 1790 East 114th Street, Los Angeles, California from July 7, 2020 through January 22, 2021.

20.    Further investigation of airport employee records revealed that MUÑOZ listed 909-753-9604 as a contact telephone number.  MUÑOZ also identified 909-753-9604 as his cellular telephone number during his interview on March 17, 2021.  Further examination of 909-753-9604 (MUÑOZ' cellphone) revealed a high frequency contact between MUÑOZ' cellphone number and 323-787-7780 (subscribed to Osie WALLACE at 1790 East 114th Street, Los Angeles, California).  Additional records obtained for MUÑOZ' cellphone show that MUÑOZ' cellphone was in contact with 323-787-7780 more than 150 times between January 1, 2021 and March 18, 2021.  Specifically, MUÑOZ' cellphone was in contact with 323-787-7780 approximately 35 times between January 20, 2021 and January 22, 2021.

21.    Through this, agents were able to determine that CD-1 and MUÑOZ were being directed by the same Los Angeles-based SOS, who was

using the telephone number 323-253-5681 to communicate with CD-1 and the telephone number 323-787-7780 to communicate with MUÑOZ.

## V. CONCLUSION

22. For all the above reasons, there is probable cause to believe that Daryl Dann MUÑOZ committed violations of the aforementioned SUBJECT OFFENSES.

Leidy Partida, Special Agent
Federal Bureau of Investigation

Subscribed to and sworn before me this 20th day of May, 2021.

/s/ Michael Wilner

HONORABLE MICHAEL WILNER
UNITED STATES MAGISTRATE JUDGE

**ATTACHMENT A**



9

**ATTACHMENT B**

